# UTERMEHLE v. McGREAL.

DEEDS OF TRUST, FORECLOSURE OF; SUBROGATION; INFANCY;
CONTRACTS.

1. It is optional with the holder of a deed of trust to foreclose by directing a sale by the trustees named therein, or by judicial process, seeking the aid of a court of equity for that purpose.

2. Where a purchaser of real estate pays the purchase money, partly in cash and partly in notes, to the vendor, secured by a deed of trust upon the property, and subsequently negotiates another loan upon the property with one who advances the money to take up the purchase money notes and who becomes the holder thereof, the lender, although himself secured by a deed of trust upon the property for his advances, becomes subrogated to all the rights and equities of the original vendor, and is entitled to foreclose the deed of trust securing the purchase money notes.

3. An infant *feme covert* who has borrowed money from one ignorant of her infancy, for the purpose of paying part of the purchase money of a lot and erecting a house thereon, and who has secured the payment of the loan by a deed of trust on the property, cannot defeat the foreclosure of the trust, and so continue in the enjoyment of the property free from the indebtedness, by a disaffirmance of her obligation on coming of age, upon the ground of infancy at the time of the execution of the deed of trust.

4. Where an infant seeks to disaffirm her contract on coming of age, she must return the consideration, if it be in her power; and it is immaterial that the consideration has changed form since the making of the contract, and is not on hand in specie.

No. 96.  Submitted October 10, 1893.—Decided November 7, 1893.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill for the foreclosure of a deed of trust.  *Reversed.*

THE COURT in its opinion stated the case as follows:

This is an appeal from the decree of the Supreme Court of the District, in special term, dismissing appellant's bill to foreclose a deed of trust upon a certain lot in the city of Washington.

It appears from the evidence that the lot was purchased September 3, 1887, by Robert E. Moore and his wife, Car-

lotta M. Moore (now Carlotta M. McGreal, the principal defendant), of H. C. Porter, who conveyed it to them as joint tenants. The purchase price was $4,250, of which Moore paid $1,400 in cash, giving the joint note of himself and wife for $1,600 secured by a deed of trust on the premises, and assuming a purchase money note due by Porter for $1,250, which was secured also by a prior trust deed executed by Porter. Moore died in April, 1888, whereupon his wife became the owner of the property in fee simple, subject to the two deeds of trust aforesaid. Upon her failure to pay the debt due Porter, the lot was advertised for sale, under the trust deed, in May, 1889.

Mrs. Moore, through her mother as next friend, filed a bill to enjoin this sale, on the ground that she was a minor when she signed the deed of trust, and procured a restraining order which was afterwards discharged.

Mrs. Moore had been anxious to erect a house upon the lot, which was vacant, and then owned a party wall interest in the buildings adjoining on each side. To accomplish this purpose, as well as to prevent the sacrifice of the lot at forced sale under the purchase money liens aforesaid, she applied to the appellant, Sarah Utermehle, for a loan of $8,000. She represented the title as perfect, subject to the said liens and some unpaid taxes which were to be paid off, together with the necessary expenses, out of the loan, and the remainder thereof was to go to the construction of the house. Mrs. Utermehle agreed to lend the money, and on October 11, 1889, gave a check therefor to W. R. Woodward, who, as her attorney, was to examine the title and prepare the necessary papers. It was agreed by all parties that the money was to remain in Woodward's hands for disbursement, and he was first to take up the purchase money notes aforesaid, and pay the necessary expenses of making the loan, including the commission to Mrs. Moore's broker, and then to pay out the remainder in accordance with the contract made by Mrs. Moore with one Myers, for the erection of the house.

On October 22, 1889, Mrs. Moore executed her note to Mrs. Utermehle for $8,000, payable three years after date,

with interest at six per cent. per annum, payable quarterly, with a stipulation that default in the payment of any instalment as it became due should mature the principal. A deed of trust was also executed by Mrs. Moore to Woodward and Taylor, trustees, in the ordinary form, with power of sale in case of default, etc.

Woodward disbursed the money in strict accordance with the agreement, making his last payment March 31, 1890, at which time $93.01 were left in his hands. On February 17, 1890, Mrs. Moore married her co-defendant, W. P. McGreal, and as soon as the house was finished, about April 1, 1890, they moved into it and have since made it their home.

It appears that Mrs. McGreal was a minor when she signed the note and trust deed, having been born June 20, 1869. Neither Mrs. Utermehle nor her agents had any knowledge of this disability when the loan was made, nor until about June 13, 1890.

Mrs. Moore's mother lived with her before and during the negotiations for the loan and the erection of the house, and was fully informed of, and gave her approval to, everything that was done. No questions were ever asked with respect to Mrs. Moore's age, and no misrepresentations thereof were made. There was nothing to suggest the inquiry. Mrs. Moore was a grown woman, and had been a widow for a year and a half. It is true that she had alleged her minority in the bill filed in May, 1889, to restrain the sale of the lot under the deed of trust to secure the purchase money notes to Porter, but Mrs. Utermehle's attorney never saw these papers and only knew that a bill was pending to restrain the sale, which having failed of its purpose, was to be, and before the loan was completed was, dismissed. The mother, when questioned as a witness, said that they did not mention Mrs. Moore's minority " because she asked for the loan in good faith and intended to do what was right." It was not pretended that any undue advantage was taken of Mrs. Moore in making the loan. The loan was decidely to her advantage; it prevented the sale of the lot and enabled her to build a

house upon it, the enjoyment of which she still possesses. The lot cost originally $4,250, and its value with the improvements on it at the time of the trial was proved to be at least $12,000.

Mrs. Moore paid the first instalment of interest that fell due, and made no sign of an intention to repudiate the contract until more than two months after she had moved into the house. The first notice was contained in a letter to Mrs. Utermehle's agent, June 13, 1890, and this was followed up June 20, 1890—the day of arrival at majority—by a formal repudiation of the note and deed of trust, which was recorded and a copy served upon appellant and the trustees.

Upon hearing, the court below refused any relief whatsoever, and dismissed the bill. From this decree complainant appealed to the General Term, from whence it has been regularly transferred to this court.

*Mr. Wm. Redin Woodward* and *Messrs. Edwards & Barnard* for the appellant:

1. The appellant, and complainant, is entitled to a foreclosure of the deed of trust by judicial process, whether any concealed infirmity in the deed of trust, or a refusal or inability on the part of the trustees to execute the trust is shown or not. R. S. D. C., Sec. 808 ; *Dodge* v. *Freedman's Savings & Tr. Co.,* 106 U. S., 445; Am. and Eng. Enc. of Law, Vol. 3, p. 277, par. 17, and notes; Jones' Mortgages, Vol. 2, Sec. 1443; Story's Eq., Vol. 2, p. 332; Hill on Trustees, 175; *Warehime* v. *Carroll Co. B. A.,* 44 Md., 516 ; *Marriott* v. *Hardesty,* 8 Ala., 694 and 706 ; *Carradine* v. *O'Connor,* 21 Ala., 573 ; *Morrison* v. *Bean,* 15 Texas, 269 ; *Thompson* v. *Houze,* 48 Miss., 450 ; *McDonald* v. *Vinson,* 56 Miss., 497.

2. Executed contracts of infants are voidable, not void. Such a contract may be affirmed or disaffirmed by an infant at his election when he attains his majority. But, if he elects to disaffirm, to be effective, he must at the same time also include, if then in a position to do so, the return to the other party of the consideration or its fruits. While the right of

disaffirmance is preserved, the preponderance of authority is in favor of holding an infant to common honesty, and, if in her possession or under her control when of full age, to return the consideration or the property into which it has been traced. 2 Kent's Com., 240; *Wilson* v. *Wallace*, 64 Miss., 13; *Zouch* v. *Parsons*, 3 Burr., 1794; *Strain* v. *Wright*, 7 Ga., 568. The contract, however, must be disaffirmed *in toto*; "that is to say, if he has property in his hands, acquired by the contract, the other party may reclaim it." *Carpenter* v. *Carpenter*, 45 Ind., 142; *Carr* v. *Clough*, 26 N. H., 293; *Badger* v. *Phinney*, 15 Mass., 363; *Hibbard* v. *Cummings*, 1 Greenl. (Me.), 11; *Monl. Bldg. A.* v. *Herman*, 33 Md., 133; 60 Miss., 431; *Bailey* v. *Barnberger*, 11 B. Mon. (Ky.), 115. See also Tyler Inf. & Cov., Secs. 36, 37, 38, pp. 78-82; Bac. Abr., Lease B; Schouler's Dom. Rel., Sec. 446; Story Contracts, Sec. 42; Jones' Mortg., Sec. 104; 9 Vin. Abr., 414 ("Enfant"). It may be unnecessary to multiply citations. In the language of the court, in 21 Vt., at page 500, "the good sense and equity of the doctrine seems too apparent to require any reasoning or authorities to support it." As the decision of the special term, however, is not in accord with this position, attention is invited to the following additional cases which are in harmony with the rule contended for in behalf of the complainant: *Manning* v. *Johnson*, 26 Ala., 446; *Hastings* v. *Dollarhide*, 24 Cal., 195; *Riley* v. *Mallory*, 36 Conn., 206; *Skinner* v. *Maxwell*, 66 N. Car., 45; *Thomason* v. *Phillips*, 73 Ga., 140; *Stout* v. *Merrill*, 35 Iowa, 47; *Phillips* v. *Green*, 5 T. B. Mon. (Ky.), 345; *Dana* v. *Combs*, 6 Greenl. (Me.), 89; *Boyden* v. *Boyden*, 9 Met. (Mass.), 521; *Young* v. *McKee*, 13 Mich., 552; *Cogley* v. *Cushman*, 16 Minn., 397; *Kerr* v. *Bell*, 44 Mo., 120; *Uecken* v. *Koehn*, 21 Neb., 571; *Roberts* v. *Wiggin*, 1 N. H., 73; *Roof* v. *Stafford*, 7 Cow. (N. Y.), 179; *Henry* v. *Root*, 33 N. Y., 526; *Lynde* v. *Budd*, 2 Paige Ch., 191; *Curtiss* v. *McDougall*, 26 Ohio St., 66; *Wade* v. *Lowe*, 69 Texas, 522; *Smith* v. *Evans*, 5 Humph. (Tenn.), 70; *Weed* v. *Beebe*, 21 Vt., 495; *Mustard* v. *Wohlford*, 15 Gratt. (Va.), 340; *Callis* v. *Day*, 38 Wis., 643; *Gillespie* v. *Bailey*, 12 W. Va., 70.

3. The appellant was subrogated to the rights of Porter, the original vendor of Mrs. McGreal and her husband, and the appellant thereby succeeded to all of Porter's rights, and, as such vendor, became the equitable assignee of the securities he held and surrendered to her for full value, *and a court of conscience will protect her in that position.* Jones' Mortg., Secs. 874-877 and 1080; 3 Pom. Eq., Sec. 1300 and note; *Ottman* v. *Moak,* 3 Sandf. Ch., 431 (472). In substance, the trust deed to secure the $8,000 was, *quo ad,* the unpaid purchase money, an extension of its payment by Mrs. Utermehle as the equitable assignee of Porter's securities. And that full relief may be given to her in this position the formal releases of his securities will be treated by the court as a nullity or set aside. Jones' Mortg., Sec. 877. Porter's conveyance and the trust deeds he held to secure the unpaid purchase money constitute but *one transaction.* Jones' Mortgs., Sec. 104, and cases cited; *Roberts* v. *Wiggin,* 1 N. H., 37; *Bigelow* v. *Kinney,* 3 Vt.; 358; *Young* v. *McKee,* 13 Mich., 565; 5 Ga., 568; *Callis* v. *Day,* 38 Wis., 647.

4. Mrs. McGreal, against whom relief is sought by the bill, occupies no different position than she would if she were plaintiff asking affirmative aid, under similar circumstances, of the court. The defense interposed by plea is to be met by the same rules as would control her efforts if she were in court as plaintiff in the first instance. An executed contract is binding until avoided. On attaining full age Mrs. Mac-Greal, if desirous of availing herself of her disability, was compelled to act, either voluntarily or as a suitor in the courts. In either case she was met with the same just rule concerning the return of the consideration as a condition for her release of the alleged burden she undertook to avoid. There is no escape from this. Non-action will not do, for such a course coupled with the retention or use of the consideration, amounts, as adjudged in numerous cases, to an affirmance. *Bigelow* v. *Kinney, supra; Dana* v. *Combs, supra; Phillips* v. *Green, supra; Hibbard* v. *Cummings, supra.* Courts of equity are always open for the administration and

correction of trusts.   In determining controversies between trustees and *cestuis que trust* it searches the conscience of both and disposes of the controversy on just and equitable principles without discrimination, we submit, as to the position of the parties before the court, whether plaintiff or defendant.   *Farrell* v. *Mayor, etc., Balt.*; Ct. Apps. Md., Wash. Law Rep., Vol. 20, p. 380; 26 N. H., 296.

*Mr. Charles A. Elliott* for the appellees:

1. A court of equity should not have been appealed to to foreclose this deed of trust, when the parties had by convention provided the mode of its execution without the aid of the court.   The defendant should not be put to the expense of a suit and trustees be appointed by the court in the place of those who were selected because, perhaps, of their peculiar fitness, and in whom was vested the legal title to the land. The court should not take in charge the execution of a contract made between competent parties, in which the rights and remedies of each are clearly defined by the instrument itself.   No special circumstances are alleged that would give the court jurisdiction, and this is fatal on demurrer, or indeed at any stage of the proceedings.

2. A contract of the character of the one involved in this suit is voidable on the part of an infant, and subject to his right of election, when he shall have attained his majority, to affirm or disaffirm it.   To constitute an affirmance there must be some act done after the party has reached the age of twenty-one years " to confirm " the contract.   Whilst acts *in pais* may amount to a confirmation of a deed, those acts must have been done after the party has become of age, and must be of such a solemn and unequivocal nature as to establish a clear intention to confirm the deed after a full knowledge that it was voidable.   Acts or conduct *during minority* will not preclude or estop a party from exercising such right of disaffirmance or interposing the defense of infancy when suit is brought to enforce such contract.   *Tucker* v. *Moreland*, 10 Pet., 59; *Sims* v. *Everhardt*, 102 U. S., 300; *Stansbury* v.

*Inglehart,* 20 D. C.    ; *Zouch* v. *Parsons,* 3 Burr., 1791 ; 1 Am. Lead. Cas., 259, and cases cited ; *Dickerson* v. *Colsgrove,* 100 U. S., 578 ; *Kirk* v. *Hamilton,* 102 U. S., 68 ; Bigelow on Estoppel, 60 ; *People* v. *Brown,* 67 Ill., 435 ; *Brantley* v. *Wolf,* 60 Miss., 422 ; *McCarty* v. *Carter,* 49 Ill., 53 ; *Wieland* v. *Kobick,* 110 Ill., 16 ; *Brown* v. *McCune,* 5 Sandf. Ch., 228 ; *Baker* v. *Stone,* 136 Mass., 405 ; *Conrad* v. *Lane,* 26 Minn., 389 ; *Whitcomb* v. *Joslyn,* 51 Vt., 79 ; *Pitch* v. *Laycock,* 7 Ind., 412 ; *Wilson* v. *Branch,* 77 Va., 65 ; *Myers* v. *Sanders,* 7 Dana, 507 ; *Gale* v. *Martin,* 4 Ch. Dec., 428.

3. The appellant had constructive notice of the non-age of the appellee, Mrs. McGreal, before any money was disbursed and before the execution of the note and deed of trust, by the pendency of the equity suit of *Moore* v. *Porter,* wherein it appeared that she was a minor.    *Dibble* v. *Jones,* 5 Jones Eq. (N. C.), 389.

4. When an infant disaffirms his contract of sale and seeks to recover back money paid by him, he must return the thing purchased to the vendor, subject to this qualification, that he has, when he exercises his election in his possession or under his control, the *identical* thing purchased, so that he may return it; so if he sell real estate he may not disaffirm without returning the consideration he received, provided he has retained it and it can be returned in *kind*.    If in either case he cannot restore the *identical* thing he received, he is under no such obligation as a condition of his recovery.    Tyler on Infancy (2d ed.), Sec. 37, and cases cited; Ewell's Lead. Cas. on Inf. and Coverture, p. 119; *Tucker* v. *Moreland, supra ; Price* v. *Furman,* 27 Vt., 270 ; *Chandler* v. *Simmons,* 97 Mass., 508 ; *Miller* v. *Smith,* 26 Minn., 248 ; *Pitch* v. *Laycock, supra ; Miles* v. *Lingerman,* 24 Ind., 385 ; *Sims* v. *Bardoner,* 86 Ind., 87 ; *Mustard* v. *Whitford's Heirs,* 15 Gratt., 329 ; *Boyden* v. *Boyden,* 9 Metc., 519 ; *Shaw and Wife* v. *Boyd,* 5 Sergt. & R., 309, 312 ; *Bigelow* v. *Kinney,* 3 Vt., 353 ; *Robbins* v. *Eaton,* 10 N. H., 561 ; *Catlin* v. *Haddox,* 49 Conn., 492 ; *Cressinger* v. *Welch,* 15 Ohio, 156-194; *Connor* v. *Birdsall,* 1 Johns. Cases, 127 ; 1 Am. Lead. Cases, 259, and cases cited.

5. In this case the infant has sought no affirmative relief, and has not invoked the aid of the court; on the contrary, she is resisting a contract sought to be enforced against her. Upon no principle can she be deprived of her defense. The maxim of " He who seeks equity must do equity " applies only to a party who is seeking relief in the character of a complainant. St. Eq. Jur., Sec. 64. Another maxim of equity might be well remembered, " Equity follows the law," which, according to Mr. Story, means that: " Where a rule of the common or the statute law is direct and governs the case with all its circumstances on the particular point, a court of equity is as much bound by it as a court of law and can as little justify a departure from it."

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first point to be disposed of, is the contention of the appellees, that, without reference to the merits, the decree dismissing the bill should be affirmed, because the complainant having the power, through the trustees, to sell under the deed of trust, is not entitled to foreclosure by judicial process without at least alleging some infirmity in the trust deed, or the refusal or inability of the trustees to act thereunder. The point is not well taken. The special powers contracted for in such instruments do not take away the jurisdiction of the courts of equity; they are merely additional thereto, to be exercised at the option of the mortgagee. The mortgagor has no right to complain if the mortgagee declines to exercise his summary remedy and resorts to the slower process of the court instead.

Even if this were not the rule, the bill shows on its face the utter insufficiency of the contract remedy, and the necessity of appeal to the powers of the court.

If it be granted that the power of sale in an infant's mortgage is voidable only, and not absolutely void at law, yet, after a formal and complete renunciation of the contract, as in this case, a sale by virtue thereof would be of no practical

value, for the infant, if bound at all, is not bound at law by the contract, but in equity by the peculiar facts of the case.

2. In so far as the right of the complainant to a foreclosure for the full amount, with interest, of the purchase money notes taken up by her and the taxes paid by her on the lot is concerned, there can be no doubt. These were valid liens upon the premises, the binding effect of which could in no way be avoided. And besides, the occupation and claim of the premises upon coming of age would, if necessary, be held a sufficient ratification of the original purchase. *Langdon* v. *Clayson*, 75 Mich., 204.

By the payment of these notes and their delivery to her, Mrs. Utermehle became subrogated to all the rights and equities of the original vendors of the lot in controversy.

3. The questions, whether infants' contracts are void, or only voidable, the manner of their disaffirmance or ratification, and the extent to which they may be held liable at law, for fraud and deceit, have been much discussed since the famous decision of Lord Mansfield in *Zouch* v. *Parsons*, 3 Burr., 1794, and many subtle refinements and distinctions have been indulged in. And the extent to which equity will relieve against the hardship of the rule at law with respect to the disaffirmance of contracts made by infants is involved in a maze of contradictions by the varying opinions and shades of opinion of learned commentators and jurists. The harsh rule of the common law has been modified by the courts in many instances, and the general tendency of equity seems to have been towards the milder—and to our minds more reasonable—rule of the civil law, by extending the liabilities and obligations of infants.

Some of the States have wisely legislated to this end, while in England the Infants' Relief Act of 37 Victoria has at least settled some of the leading points of controversy; but in this jurisdiction we are left to the common law and the principles of equity as the foundation of decision.

The chief attribute of the common law has ever been its flexibility, its power of expansion and adaptation to the

changing needs and circumstances of a complex civilization, advancing under the influences of learning, discovery and invention.   While sudden and radical changes in its rules should only be wrought by legislative power and not by the courts, yet these should not adhere to the applications of the principles made in other days under circumstances and surroundings which may have completely changed, bearing the reason of the old rule with them.

The condition of the infant who has arrived at years of discretion in this age is different to what it was comparatively a few years ago.   Grant that the necessity for his protection against the designing, is as great as, or even greater than, it ever was; yet it must be admitted that his opportunities are far greater for the perpetration of frauds upon the unsuspecting who deal with him.

Rules of equity and good conscience which may be made to operate to arrest his fraudulent conduct and bind him to restitution and reparation in plain cases calling therefor, may also be made to afford him ample protection from the artifices of others, as well as from the effects of a reckless improvidence, reasonably to be apprehended of him, by those who may deal with him.

The defendant in this case did not declare herself in words to the complainant to be of full age, but the case is in our opinion none the weaker and probably the stronger for that in its appeal to equity.   Had her appearance or the circumstances of the transaction been such as to call for a statement to that effect, it would have put complainant upon inquiry which might not reasonably have stopped with such a declaration merely.   But here was a woman grown, and a widow after several years of marriage.   She had attended to her own business before, without question from her mother and natural guardian, who lived with her.   There was nothing to excite suspicion or provoke inquiry as to her age.   The fact that she had a few months before alleged her infancy in an attempt to defeat a just debt, which was unknown to complainant, when coupled with her attempt to defeat this claim,

would seem to justify the charge that her failure to make known her disability was the result of deep design, thus giving it all the force and effect, without any of the resultant weakness, of a deliberate misrepresentation.

The right of an infant to avoid a contract made upon such fraudulent representation, has been denied in some well considered cases. *Kilgore* v. *Jordan,* 17 Tex., 341; *Fitts* v. *Hall,* 9 N. H., 441. Some very learned and distinguished text writers have expressed like opinions.

"Also, it seems, that if an infant above the age of discretion be guilty of any fraud in affirming himself to be of full age, or if by combination with his guardian he make any contract or agreement with the intent afterwards to elude it by privilege of infancy, a court of equity will decree it good against him, according to the circumstances of the fraud." Bingham on Infancy, 113.

" If an infant have been guilty of positive fraud, and thereby imposed upon the other party to his injury, he cannot set up his infancy as a defense to an action for the consideration, although the matter be in contract; for by his fraud he has put himself without the pale of his privilege, and is responsible to the same extent as if he were an adult." 1 Story on Contracts, Sec. 66.

" Neither infants nor *femes covert* are privileged to practice deceptions or cheats upon other innocent persons." 1 Story Eq. Jur., Sec. 385.

The Court of Appeals of Maryland has also said that there might be such a case of gross fraud as to estop an infant. Mon. Building Association, 33 Md., 134.

It may be admitted, however, that the majority of cases hold that an infant cannot be estopped by a fraudulent representation that is the basis of a contract between him and another. Very many, however, which maintain this doctrine assert the right of estoppel against him where, by his conduct, he has led others to act to their prejudice in dealing with persons other than himself. See Bigelow on Estoppel (4th ed.), 584 *et seq.*

*Ferguson* v. *Bobo,* 54 Miss., 121, is a case of this kind. The infant conveyed land to her father to enable him to obtain a loan, to secure which he mortgaged the land. She had every appearance of being of full age, but made no statement that she was. The lender had no knowledge of her non-age, or of any fact that put him upon inquiry. She was held estopped to set up her infancy in avoidance, though the court admitted, in deference to authority, that had the mortgage been made by her to the complainant, she would not have been. The distinction is, to say the least of it, shadowy and extremely difficult of apprehension. If an infant, standing by and making false statements, or remaining silent when it was his duty to speak, permit another to contract, as his own, with property which belongs to the infant, or against which he has a claim, can be thereby estopped to afterwards question its effect, then it would seem that he might as reasonably be estopped to avoid a contract entered into with himself, on the strength of an actual representation or tacit assertion of a similar falsehood.

In *Sims* v. *Everhardt,* 102 U. S., 300, which is claimed by appellee to be conclusive of this case, the complainant, who was both a married woman and an infant, conveyed the land with her husband, and shortly after divorce from him, which occurred many years afterward, disaffirmed the deed and demanded possession, which was refused. She thereupon brought suit, " to set aside the deed, and for an account of the rents and profits, as well as of the amount she is in duty bound to pay on account of the purchase money," and a mortgage on the land which had been paid off by her grantee. It appears that when the deed was made doubts were entertained whether she was then of age, and to remove them she signed a written statement, endorsed on the deed, that she was then of age. There was no other element of fraud in the whole transaction. The court says, in the opinion: " The circumstances under which the deed was made are to be considered. There is evidence that she was constrained by her husband to execute the deed; that his conduct to-

wards her was abusive, violent and threatening, in order
to induce her to consent to the sale; that she was in-
timidated by him; that a look from him would make her do
almost anything; and that she was in a weak and nervous
condition." The question discussed at length in the opinion
was the effect of lapse of time as evidence of confirmation.
The court did say, however, with respect to the written
denial of infancy: "An estoppel *in pais* is not applicable to
infants, and a fraudulent representation of capacity cannot be
an equivalent for actual capacity."

But the mere fact that it was thought necessary to obtain
a written affirmation of ability to contract, was enough to put
the grantee upon notice of the necessity for further proof in
that instance, where the grantor was a married woman and
under the influence of a brutal and despotic husband. The
case is stronger because she was laboring under the double
disability of infancy and coverture.

In consideration, however, of what was said in *Sims* v.
*Everhardt*, we will pass the question and turn to the consid-
eration of another, of a similar general nature, arising out of
the same facts, which has been urged as sufficient foundation
for all the relief asked by the complainant.

4. Without reference, then, to whether the defendant should
be estopped by the circumstances surrounding the transac-
tion to deny the effect of her contract, will equity permit her
to hold all the fruits of this loan, to live in and enjoy the com-
fortable home built therewith, and yet refuse to make return?
We think not: " Infancy is not permitted to protect fraudu-
lent acts, and therefore, if an infant takes an estate and agrees
to pay rent, he cannot protect himself from the rent by pre-
tense of infancy after enjoying the estate, when of age.

" If an infant pays money on his contract, and enjoys the
benefit of it, and then avoids it when he comes of age, he can-
not recover back the consideration paid. On the other hand,
if he avoids an executed contract when he comes of age on
the ground of infancy, he must restore the consideration
which he had received. The privilege of infancy is to be used

as a shield and not as a sword. He cannot have a benefit of contract on the one side without returning the equivalent on the other. But there are many hard cases in which the infant cannot be held bound by his contract though made in fraud, for infants would lose all protection if they were to be bound by their contracts made by improper artifices, in the heedlessness of youth, before they had learned the value of character and the just obligation of moral duties." 2 Kent Com.., 240.

The learned Parsons says: "And it has been held that an infant can rescind his purchase and recover the price he paid only when he is ready to return the thing purchased; nor do we think the rule would be unjust to the infant, if it did not permit him to rescind his purchase, unless he was both willing and able to return the thing purchased in substantially as good a condition as when he purchased it." 1 Par. on Cont., 327.

In *Watts* v. *Cresswell*, 9 Vin. Abr., 415, Lord Cowper used an expression, the force of which has strengthened rather than weakened in the lapse of time, that " If an infant is old enough and cunning enough to contract and carry out a fraud, he ought to make satisfaction for it."

In some of the States the doctrine has been held, and tenaciously adhered to, that an infant, in order to successfully disaffirm his contract, must make complete restitution in all instances, whether he have it in kind or not at the time. *Cummings* v. *Powell*, 8 Tex., 81 ; *Stuart* v. *Baker*, 17 Tex., 418 ; *Bingham* v. *Barley*, 55 Tex., 281 ; *Wade* v. *Love*, 69 Tex., 522 ; *Fitts* v. *Hall*, 9 N. H., 441 ; *Heath* v. *Stevens*, 48 N. H., 251 ; *Hall* v. *Butterfield*, 59 N. H., 354.

The same doctrine, though not carried so far as in the Texas cases, is maintained in the following : *Kerr* v. *Bell*, 44 Mo., 120 ; *Highly* v. *Barron*, 49 Mo., 103 ; *Baker* v. *Kennett*, 54 Mo., 88 ; *Smith* v. *Evans*, 5 Humphrey (Tenn.), 70; *Bailey* v. *Barnberger*, 11 B. Mon., 115 ; *Middleton* v. *Hoge*, 5 Bush, 478 ; *Bryant* v. *Pottinger*, 6 Bush, 473 ; *Adams* v. *Beall*, 67 Md., 53 ; *Badger* v. *Phinney*, 15 Mass., 359 ; *Manning* v. *Johnson*, 26 Ala., 446 ; *Riley* v. *Mallory*, 33 Conn., 201. In the case last cited, the court states two exceptions to the rule

that infants may avoid their contracts, one of course being in the case of necessaries, and the other " when he has enjoyed the benefits of them and cannot restore the other party to his original position."

The Supreme Court of Michigan, in a recent case, like this in some of its features, said: " Courts of equity will always view with special favor and guard with jealous care the rights of infants, but they will not lend their aid to infants or those who entrench themselves behind them, to perpetrate wrongs upon innocent parties, or aid in depriving such parties of their rights." *Langdon* v. *Clayson*, 75 Mich., 204.

Notwithstanding the number and weight of the foregoing authorities, it may be admitted as probably true, as claimed by Mr. Schouler, the greater number of authorities hold that " it is only when an infant, on disaffirming his contract at majority, still has the consideration, that he can be compelled to return it as the condition of disaffirmance; restitution in full not being a prerequisite, but restitution of the advantages as they still remain to him and capable of being restored." Schouler, Dom. Rel., Sec. 446.

The question is a new one in this jurisdiction, for we cannot agree with counsel for appellee that it is determined in *Tucker* v. *Moreland*, 10 Pet., 58. That was an action at law. Barry, a minor, executed a deed of trust, with power of sale, to secure a joint note of himself and Bing. He remained in possession, and upon coming of age conveyed the land and delivered possession to his mother. A sale was had under the trust deed, and the purchasers thereat brought ejectment against her. The then unsettled question as to whether infants' contracts are void or only voidable, was discussed at length by Mr. Justice Story, who delivered the opinion of the court, as well as the proper time and mode of disaffirmance, and what circumstances might amount to confirmation. There was no point made, nor could it have been made without resort to equity, upon the right to demand restitution as a prerequisite to the right to annul the contract altogether. It is true, the learned justice did say: " To give effect to such disaffirmance, it was not necessary that the infant should

first place the other party *in statu quo*"; but it is apparent that this was said with respect to the *act* of disaffirmance, as such at law, without regard to its effect in equity.

Feeling ourselves at liberty to adopt a view with respect to this vexed question consonant with our own reasoning, and in accordance with our own sense of sound public policy, as involved in the relation of infancy, we are of the opinion that the safer course lies between the extreme rule prevailing in Texas and probably in New Hampshire, that the consideration must, in all cases, be restored before disaffirmance can be made effective, and the other that the return will be required only where the infant has it in specie, or has retained and disposed of it, with full knowledge, after arriving at his majority.

It is in our view impracticable to attempt to make a general rule applicable to all cases; each must be decided in accordance with its own peculiar facts. The infant should be fully protected from those who deal with him, knowing his infancy, and with intent to overreach him, or who with an eye single to their own advantage, disregard his apparent disability, or his known improvidence and recklessness, and do him real injury, though it may be in no other way than by placing it within his power to stimulate and gratify inclinations and appetites which he has not the discretion or strength of character to control.

This view is well expressed in *Bailey* v. *Barnberger, supra,* as follows: " No doubt if one should take any advantage of an infant, or should overreach or defraud him, he would be so guilty of wrong himself that he could not demand a restoration of the consideration received by the infant before the latter could avoid his contract. Nor would we say that an infant of tender years, or one whose appearance indicates clearly that he is not twenty-one years of age, is embraced within the rule."

The rule that the infant shall in all cases be made to account for actual, permanent benefits received, seems now to prevail in New Hampshire, modifying to some extent the doctrine of earlier cases, and is thus forcefully stated: " The

obligation to account for a benefit actually received secures ample protection from fraud and imposition, and at the same time prevents the privilege from being used to perpetrate fraud. It prevents their disability from being ' not their protection merely, but an extraordinary legal ability to rob others; not a shield, but a sword; not a mere legal incapacity to be plundered by their fellow-men, but a vast capacity to plunder them with impunity.' " *Hall* v. *Butterfield*, 59 N. H., 358-9.

Without further prolonging this discussion, we will conclude by saying, that in our opinion it would be a reproach upon the whole system of equity were we to permit the defendant, under all the facts and circumstances of this case, to hold and enjoy all the fruits of this fair and advantageous contract and then repudiate its obligation.

5. There is yet another ground upon which the right of appellant to foreclose for the entire amount of her debt can be logically and justly maintained. All the authorities agree that where the infant has the consideration in hand at the time of the exercise of the power of disaffirmance it must be returned before the contract will be avoided in equity. Counsel for appellee do not deny this, but contend that this consideration must be on hand in specie. The contention, in other words, amounts to this: if an infant has received land or goods in exchange, he must have the same land or goods: if money, he must have the identical money.

According to this, if an infant may have made a good exchange of lands or property and then have re-exchanged, or resold them, for more property or money, at a good profit, which he has in his possession on arrival at majority, he may nevertheless disaffirm his own deed and recover the land first conveyed by him, without restitution to his vendee. Or, if he shall have received money in exchange for land at its full value, and then have invested it in other lands or in stocks or bonds worth far more at the time of disaffirmance of his deed than the land conveyed by him, he may notwithstanding repudiate his conveyance, recover his land, and make no account whatever.

The contention upon analysis appears as unsound in reason as it is vicious in morals. Courts of equity do not regard the shadow or the form, but the substance of things. They look, not at what has apparently been done, but go beneath the surface to ascertain what was actually done or intended to be done. They convert land into money and money into land in their interpretation of contracts, in the adjudication of the rights of parties founded therein, notwithstanding the conversion may stand in intention or direction only, in point of fact. They convert deeds into mortgages, and titles absolute on their face into trusts, when the proofs justify, and the interests of justice demand. They pursue trust property or funds, where the proof exists to trace them, through all the various transformations that cunning and fraud may be able to effect, and where the rights of innocent third parties have not intervened, impress them with the character of the originals.

When we look at the facts of this case, in this equitable light, it is plain to be seen that the infant defendant had, in kind, on the day of her attempted disaffirmance the very thing that she bargained for. Her object in effecting the loan was not to borrow money merely, but to extend a purchase money lien, and to build a dwelling on the lot. She contracted at the same time for the erection of the house, and consented that the money should be held by Woodward, who, to that extent, was the agent and trustee of both parties, and disbursed by him in taking up the lien and paying for the house as its construction progressed. The money was intended and agreed to be converted into the lien and into the house. The lien still exists, though changed in form, and the house stands upon the lot affording shelter to the infant and her second husband.

It follows from what has been said that the decree appealed from must be reversed, with costs to the appellant, and the cause remanded to the court below with directions to pass a decree of foreclosure in conformity with this opinion.

*Reversed.*