# OCTOBER TERM, 1915.*

WHITE v. GRAND RAPIDS & INDIANA RAILWAY CO.

1. WILLS—ESTATES OF DECEDENTS—REFORMATION.

In a suit to reform a conveyance given by a decedent to defendant railway company, conveying a strip of land 125 feet in width, though the grantor intended to convey a strip 100 feet in width, the widow of the grantor was a proper party complainant, under a devise of all decedent's estate, to be by her used and disposed of during her natural life, as the husband might have done, giving her full power to sell, exchange, invest or reinvest such estate in the same manner as he might do and to distribute the same by gift or otherwise during her said life, and to apportion the same by will, but if any of it should remain undisposed of at the death of the wife, the residue should be equally divided among testator's children, since the effect of the will was to vest an absolute fee in the widow.

2. SAME—LIFE ESTATE.

The test for determining whether such an estate was intended or a life interest only, is whether the will gives an unlimited or only a modified power of disposition in the first devisee.

3. SAME—PROPERTY AFFECTED—VENDOR AND PURCHASER.

Nor did the complainant erroneously include in her bill a portion of the strip in dispute that had been conveyed by land contract or a part which had been conveyed by warranty deed. While she would not be liable upon any covenants in the deed which she signed to bar her dower, she would be affected as a legatee of deceased if the title should fail because she had succeeded to the grantor's interest.

*Continued from Vol. 189.

4. REFORMATION OF INSTRUMENTS.

And evidence that both parties to the conveyance fenced off a strip 100 feet in width, that defendant later purchased a parcel adjoining the right of way for use in putting in a turntable and, on abandoning the turntable, restored the fence to the old line, and that decedent sold parcels that included the strip in question and one of the grantees erected a structure on one portion of the strip, defendant entering no protest, also, that decedent and his grantees occupied portions of the 25-foot parcel for fifteen years without objection from defendant railway company, sufficiently justified the trial court in granting to complainant the reformation asked, and the mistake was correctly held to have been mutual.

Appeal from Missaukee; Lamb, J. Submitted January 11, 1915. (Docket No. 42.) Decided January 3, 1916.

Bill by Mary Louise White, as executrix of the last will of Mary A. Reeder, deceased, to quiet title to certain land. From a decree for complainant, defendant appeals. Affirmed.

*A. W. Penny* (*N. W. Dunan,* of counsel), for complainant.

*James H. Campbell* (*Henry Miltner,* of counsel), for defendant.

BIRD, J. On December 9, 1889, Daniel Reeder was the owner of 80 acres of land in Missaukee county, described as the east half of the northwest quarter of section 6, over which he conveyed to defendant for a nominal consideration a right of way for its railway, which was soon thereafter constructed over the south half of said 80. In December, 1912, Daniel Reeder died, leaving his estate by will to his widow, Mary A. Reeder, the complainant's decedent. Early in the year 1913 defendant attempted to move the east fence to the east 25 feet, where it claimed the true line was.

When Mrs. Reeder protested against this action, she learned for the first time that the deed given by her husband and herself in 1889, described a strip of land 125 feet wide, 50 feet west of the center of the track, and 75 feet east of the center, instead of a strip 50 feet on either side of the track, as she had always understood it. She pursued her investigation further, and found that the deed recorded in the register's office verified the information given her by defendant's agents. She then filed this bill to correct the mistake in the description, and to quiet title in her and in the grantees of portions of said 25 feet, and also to restrain defendant from moving the fence from its present position. A hearing was had at which the matter was gone into very thoroughly. At the conclusion the chancellor was of the opinion that the allegations of the bill had been sustained, and the prayer of the bill was granted correcting the description and quieting title to portions of the 25-foot strip in the complainant, and to other portions in the grantees of Daniel Reeder.

1. Defendant appeals, and the first question raised is that Mary Reeder did not have sufficient interest in the estate of Daniel Reeder to sustain a bill to quiet title thereto. The material part of Daniel Reeder's will is as follows:

*"First.* I give, devise and bequeath unto my beloved wife, Mary Amelia Reeder, all my estate, both real and personal, in whatever it may consist or whereever situated, at the time of my decease, to be by her used and disposed of, during her natural life, precisely the same as I myself might do, were I living; and giving my said wife full power to sell, exchange, invest and reinvest the same in the same manner I might do if living, and to distribute the same by gift, or otherwise, among my children at any time during her life, as to her shall seem meet and proper; and to apportion the same among my said children, by will, after her decease, according to her own judgment and discretion.

*"Second.* But if any of my said estate shall remain

undisposed of by my said wife at the time of her decease, I give, devise and bequeath all such residue and remainder of my said estate, to be equally divided among my children. * * * "

Complainant argues that these provisions vested an absolute estate in fee in Mary A. Reeder, the complainant's decedent, under the authority of *Jones* v. *Jones*, 25 Mich. 401, *Dills* v. *La Tour*, 136 Mich. 243 (98 N. W. 1004), and *Moran* v. *Moran*, 143 Mich. 322 (106 N. W. 206, 5 L. R. A. [N. S.] 323, 114 Am. St. Rep. 648), while defendant contends that the provisions carried to complainant's decedent a life estate only under the reasoning of *Bateman* v. *Case*, 170 Mich. 617 (136 N. W. 590) ; *Farlin* v. *Sanborn*, 161 Mich. 615 (126 N. W. 634, 137 Am. St. Rep. 525), and other cases following this line of authorities.

The test suggested in *Gadd* v. *Stoner*, 113 Mich. 689 (71 N. W. 1111), to determine whether an estate in fee or a lesser estate was intended is:

"Whether the will gives an unlimited, or only a modified, power of disposition in the first taker."

Applying this test, we must conclude that the present case falls among those cases first cited, and that the complainant's decedent took by the will an absolute estate in fee. Taking this view of the provisions of the will, it must follow that counsel's point that complainant's decedent had not sufficient interest to maintain the bill to quiet title must fail. It must likewise follow that complainant's decedent, having title in fee, was entitled to include in her bill portions of the 25-foot strip which had been sold upon land contracts. *Eaton* v. *Trowbridge*, 38 Mich. 454. It was also proper to include therein the portion of the 25-foot strip which had been conveyed by warranty deed. While complainant's decedent would not be liable on the covenant in the deed because she signed the deed only for the purpose of barring her dower (*Hovey* v. *Smith*,

22 Mich. 170; *Carley* v. *Fox,* 38 Mich. 387; *Langdon* v. *Clayson,* 75 Mich. 204 [42 N. W. 805]; *Webb* v. *Holt,* 113 Mich. 338 [71 N. W. 637]), she would be liable as legatee to the grantee if the title should fail by reason of her having succeeded to the title of the estate of the warrantor (*Rockford, etc., R. Co.* v. *Beckemeier,* 72 Ill. 267). This would give her such an interest in the portion which had been conveyed by deed as to entitle her to include it in her bill for the purpose of having the title quieted.

2. It is contended that the testimony does not establish the fact that there was a mistake in the description nor that it was a mutual mistake. Some of the established facts which influenced the chancellor in reaching a contrary conclusion were:

(*a*) Mr. Stout, a witness for complainant, testified that he and Daniel Reeder went to Grand Rapids together, and both of them offered Mr. Huggart (who was acting for defendant) a right of way over their respective farms; that nothing was said as to its width. It was spoken of simply as a right of way. Subsequently it appeared from defendant's testimony that the usual railroad right of way is 100 feet in width.

(*b*) Daniel Reeder, after making the conveyance to defendant, placed a fence on the east side of said track, 50 feet from the center thereof, and thereafter had possession of and used all of the land east of said fence.

(*c*) That later defendant fenced the entire strip, and placed the east fence 50 feet from the center of the track, although it never used the right of way over the north half of said 80 for railroad purposes.

(*d*) After defendant received the conveyance, it purchased a small parcel 22 feet east and west by 70 feet north and south contiguous to said right of way on which to locate a turntable, and described it as commencing at a point 50 feet east of the center of its track, and after it ceased to use the same it straightened its fence on the 50-foot line and leased the same, and described the parcel as commencing at the same place.

(*e*) After the conveyance was made, Daniel Reeder

sold and conveyed by warranty deed and by land contracts certain parcels contiguous to the east fence, and in so doing fixed the starting point 50 feet from the center of defendant's track.

(f) After the conveyance to defendant, Daniel Reeder sold to the village of Lake City a parcel of land for the purpose of a village pound, described in the same manner. The village erected a building on a portion of the 25-foot strip, and defendant never made any protest.

(g) That Daniel Reeder and his grantees in title and contract vendors have occupied and used the said 25-foot strip openly, notoriously, under claim of title for upwards of 15 years, without question or objection on the part of the defendant.

The testimony establishing these facts, together with other corroborating circumstances appearing in the record, lead to the conclusion that only 100 feet was intended to be conveyed, and that the mistake was a mutual one is evidenced by the manner in which both Daniel Reeder and defendant afterwards dealt with each other, and with third persons in relation to the premises.

The decree of the trial court will be affirmed, with costs of both courts to complainant.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice McALVAY took no part in this decision.