## William J. Smith, Administrator, Appellant, v. James Morrow, Appellee.

### Gen. No. 6,886.

1. LANDLORD AND TENANT, § 233*—*when defect latent.* To come fully within the terms of the definition of a latent defect, the defect should be hidden from knowledge as well as from sight.

2. LANDLORD AND TENANT, § 259*—*when question whether landlord chargeable with notice of defect for jury.* In an action against a landlord for negligent death caused by the giving way of a balustrade on a porch and outdoor stairway, where plaintiff charged knowledge of the defect and also that by the exercise of reasonable care defendant could have ascertained the defect and repaired it, and the proof showed that the balustrade had been constructed and in use for a number of years during which time it was exposed to all kinds of weather which naturally might cause the condition of decay and deterioration which was found, and the clear inference might be drawn from the evidence that defendant did nothing by which he could have discovered the defect, there was a question of fact for the jury and the court erred in directing a verdict for defendant.

Appeal from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded. Opinion filed April 13, 1921. Rehearing denied June 21, 1921.

COOKE, POPE & POPE, for appellant.

A. F. BEAUBIEN, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

William J. Smith, the appellant, as administrator of the estate of Mabel Victoria Cooper, deceased, commenced this suit against the appellee, James Morrow, for the benefit of the next of kin of the deceased, in the circuit court of Lake county, to recover damages

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

resulting to the next of kin by the death of the de-
ceased, which it is alleged was occasioned by the neg-
ligence of the appellee.

The appellee is the owner of a three-story tenement
building, situated on Belvidere street in the City of
Waukegan. The building contains six apartments,
two in each of the three stories, located on each side
of the center of the building. For the use and con-
venience of the tenants, who occupy the apartments,
porches were constructed in the rear and were built
across the entire rear elevation of the building, and
connected together as one structure. There is a sepa-
rate porch for each apartment, and a center porch
which contains the stairways which run from the
ground floor to each story, and which was used in
common by all the tenants, as a means of ingress and
egress; and the center porch was under the control
and supervision of appellee as landlord. The porches
and stairways are all constructed of wood; and a ban-
ister also of wood was built along the outer edge of
the porches of each of the stories of the building.
This banister was about 3 feet high, and consisted
of an upper and lower rail which were nailed to up-
right posts, and spindles were fastened in between
the rails. The porches set apart for the tenants were
roofed over, but the center porch had no roof and was
therefore more exposed than the other porches to the
deteriorating influences of the weather. Sophia Cooper
was a tenant, and as such tenant occupied one of the
apartments in the third story, with her daughter Mabel
Victoria Cooper. Mabel was 25 years of age, and con-
tributed to the support of her mother. She had worked
for a number of years for the Northwestern Railroad,
and at the time of the accident which befell her she
was earning $100 a month. On the 14th of June, 1919,
in the afternoon, Mabel and a girl friend, who was
visiting her, were out on the porches and were walk-
ing near the banister on the center porch towards

the head of the stairway. Mabel had her arm around
her friend's neck as they were walking along. Sud-
denly Mabel's friend ducked and withdrew her head
from Mabel's arm; and during this incident Mabel
happened to take hold of the upper railing of the ban-
ister, and the banister gave way, and she fell from
the porch to the sidewalk below, and was fatally in-
jured thereby, dying within a few moments after her
fall.

The evidence tends to show that at the time of the
accident the ends of the rails which had been nailed
to the posts were decayed, and the nails which had
been used to fasten the rails to the posts had become
so deteriorated by rust that their usefulness had been
practically destroyed, and that the fastening for that
reason gave way. The decay at the end of the rails,
and the deteriorated condition of the nails, which
constituted the defect in question, were not visible,
however, nor discernible by superficial inspection.

There was a trial by jury, and at the close of the
evidence for appellant the court directed a verdict
for appellee; judgment was rendered on the verdict
and this appeal is prosecuted from the judgment.
The appellee contends that the defect in the fasten-
ing of the rails was a latent defect, of which the
appellee had no knowledge or notice, and that there-
fore he cannot be charged with liability.

A latent defect is usually defined to be one that is
not manifest, but hidden or concealed, and not visible
or apparent. 25 Cyc. 161; *Celluloid Mfg. Co. v. Cel-
lonite Mfg. Co.,* 42 Fed. 900; *Newell v. Turner,* 9 Port.
(Ala.) 420.

The defect in question was apparently of this char-
acter in that it was hidden from sight and ordinary
observation. To come fully within the terms and
scope of the definition, however, the defect should be
hidden from knowledge as well as from sight.

The declaration in this case charges that the appellee

had knowledge of the defect in question; also that by the exercise of reasonable care he could have ascertained the defect and repaired it, and that he neglected to exercise such care. "The law is well settled in this State that a landlord who rents different parts of a building to various tenants and retains control of the stairways, passageways, hallways and other methods of approach to the several portions of the building, for the common use of the tenants, has resting upon him an implied duty to use reasonable care to keep such places in a reasonably safe condition, and that he is liable for injuries which result to persons who are lawfully in such building, from a failure to perform such duty." *B. Shoninger Co. v. Mann,* 219 Ill. 242.

It is a matter of common knowledge and experience that wood such as was used in the construction of the porches in question will decay in course of time, and that nails will rust and disintegrate, especially when exposed continually to the effect of the elements. The length of time required to bring about a defective condition by decay or rust necessarily varies according to the particular conditions which prevail. The proof shows that this balustrade had been constructed and in use for a number of years, and had been continually exposed to all kinds of weather, which naturally might cause the condition of decay and deterioration which was found. The clear inference may be drawn from the evidence that the appellee did nothing by which he could have ascertained the defective condition referred to which had developed in the course of time. Under these circumstances it was a question of fact for the jury whether the appellee was chargeable with notice or knowledge of the defective and insecure condition of the balustrade in question; and whether the appellee by the exercise of reasonable care could have ascertained or have had knowledge of the defect. *Payne v. Irvin,* 144 Ill. 482;

*Fowler v. Crilly,* 187 Ill. App. 399.   We are of opinion, therefore, that under the averments of the declaration the questions of fact referred to should have been submitted to the`jury and that the court erred in directing a verdict for the appellee.   The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*