**William J. Smith, Administrator of the Estate of Mabel Victoria Cooper, Deceased, Appellee, v. James Morrow, Appellant.**

**Gen. No. 7,234.**

1. LANDLORD AND TENANT—*when verdict against latency of defect not against weight of evidence.* It is a question of fact for the jury whether the defective condition of a porch railing could have been discovered by the landlord by the exercise of reasonable care and a verdict against him will not be reversed as manifestly against the weight of evidence where it appears that the railing was one which it was his duty to keep in repair, that it had been in place for six years exposed to the elements, that it was not

morticed into the posts but flush therewith and toenailed in with three or four finishing nails at each end, that it was rotted at the ends and the nails rusted and ready to fall with the application of very slight force, and that a reasonable inspection would have revealed its condition, although there is evidence tending to show that such condition might not have been discoverable by mere ocular inspection, and that the landlord had made some general examination of the premises.

2. LANDLORD AND TENANT—*when contributory negligence of tenant not shown by evidence.* In an action against a landlord for damages from the death of a tenant caused by breaking of a defective porch railing, decedent is not shown to have contributed to the accident by being precipitated against the railing with great force during a friendly scuffle, where the testimony of the only eye-witnesses shows that she merely walked to the railing and put her hand thereon and that it gave way, causing the fatal fall, and the preponderance of the evidence shows that no scuffle took place, and the condition of the railing after the accident shows that no great force was applied to it.

3. LANDLORD AND TENANT—*contributory negligence of tenant not shown by position of body after fall through defective railing.* The position of the body of a deceased tenant on the ground below the porch from which she fell does not tend to prove that such tenant was contributorily negligent in that while scuffling with a friend she struck the railing with great force sufficient to drive it from its position, and such fact alone does not tend to disprove plaintiff's evidence that the railing, which was rotten and the nails therein rusted through, gave way when decedent laid her hand on it and precipitated her from the porch.

Appeal by defendant from the Circuit Court of Lake county; the Hon. R. K. WELSH, Judge, presiding. Heard in this court at the April term, 1923. Affirmed. Opinion filed August 13, 1923. Rehearing denied October 2, 1923.

ALEXANDER F. BEAUBIEN and GEORGE W. FIELD, for appellant.

SIDNEY H. BLOCK and JAMES G. WELCH, for appellee.

MR. PRESIDING JUSTICE PARTLOW delivered the opinion of the court.

Appellee, William J. Smith, as administrator of the estate of Mabel Victoria Cooper, deceased, began suit

in the circuit court of Lake county against appellant, James Morrow, to recover damages for the death of appellee's intestate by reason of her falling from a porch belonging to the appellant. There was a trial by jury, and at the close of all the evidence the court directed a verdict in favor of the appellant. An appeal was prosecuted to this court where the judgment was reversed and the cause remanded (220 Ill. App. 627). On the second trial the jury returned a verdict for the appellee for $5,000, and this appeal was prosecuted.

The principal ground for reversal is that the verdict is contrary to the law and the evidence. It was stipulated that appellee was duly appointed administrator of the estate of Mabel Victoria Cooper, deceased, and that her heirs were her mother, Sophia Cooper, and her brother, Alfred Cooper; that she died as the result of falling over the rail in question in this suit on June 14, 1919; that the defendant was the owner of the premises involved; that the deceased at the time of her death was twenty-five years of age and that her expectancy of life was 32.33 years.

Appellant was the owner of a three-story flat building, consisting of six flats, two on each floor, situated on Belvidere street in the City of Waukegan, Lake County, Illinois. The building faced south on Belvidere street. There was an entrance at the front of the building on Belvidere street. There was a stairway in the rear in the center of the building which extended from the first floor to the second floor where it made a turn. There was another stairway from the second floor to the third floor which came out on a small landing which was used by all of the tenants on the third floor. On the third floor there were two porches, one to the east and one to the west of the stairway. These porches were about twenty-five feet long and ten feet wide. On the west porch at the west end there was a banister or rail six or eight feet long. On the north

side of the porch commencing at the northwest corner and extending to the northeast corner were three sections of railing. The two west sections were each ten feet long. The east section on the north side of the porch was one hundred inches long, and is the section in question in this case. This section was directly opposite and north of the stairway. It consisted of two horizontal rails each one hundred inches long, the upper one being three inches wide, the lower one being two by four inches, with upright spindles between the rails twenty-nine inches long. From the top of the rail to the floor was thirty-four inches. There was a coal box on the east side of the west porch. This box was four by four feet square and about eight feet high. Between the coal box and this railing was a space of forty-two and one-half inches. There was no roof over the section of the railing in question and it was exposed to the weather, but there was a roof over the remainder of the porch. The posts to which this railing was attached were five and one-half inches square, the ends of the railing were flush with the posts and had been fastened to the posts with eight-penny finishing nails toenailed in.

The west flat on the third floor was rented from appellant by Sophia Cooper, mother of the deceased, and she had occupied it since April, 1918. The Coopers had previously lived in the west flat on the second floor immediately below the one in question. The deceased was unmarried and had worked for a number of years for the Northwestern Railway Company in Chicago and earned $125 per month until a short time before the accident, when on account of overwork she took a lighter position with the same company at $100 per month. She gave all her money to her mother who paid the rent, living expenses and household necessities. The mother had no income and was entirely dependent upon the daughter.

On Saturday afternoon, June 14, 1919, the deceased

returned home about one o'clock. Catherine Welch, a girl about fourteen years old, was there. About two o'clock the girls went down into the yard to carry in wood. Afterwards they went up on the porch and into the kitchen to wash their hands. The mother of the deceased was sitting on a box in the middle of the porch. The deceased after washing her hands came out and stood back of Catherine Welch and they were laughing and talking. The deceased put her arm around Catherine's neck and they walked east on the porch towards the stairway in the direction of the railing in question. Suddenly Catherine Welch ducked and withdrew her head from the deceased's arm. The deceased then turned and took hold of the upper rail with her hand. The railing gave way, she fell from the porch to the sidewalk below, was fatally injured, and died within a few minutes after the fall.

There were only two eyewitnesses to the accident, Mrs. Cooper and Catherine Welch. The only other witness who was on the third floor was Lewis Burke who lived in the east flat and who was sitting on the east porch just opposite the two girls. He testified he was looking in another direction and all he heard was a crash and a scream and saw the deceased fall. Lillian Wood occupied the second floor on the north side. She testified that a few minutes before the accident she heard the deceased and Miss Welch laughing and scuffling upstairs. By scuffling she said she meant making a noise with their feet. Just before the accident she heard the deceased say to Catherine Welch, "You little dickens, I will duck you in this tub of water." She heard a noise, but did not know what kind of a noise it was. Minnie Grandsee lived next to the Coopers in the east flat on the third floor. She testified that shortly before the accident she heard the girls talking and laughing and "commotioning around." She said they were scampering and frolicking and then she heard a crash and saw the de-

ceased's feet in the air. Mildred Buckles, who lived in the lower floor on the east side, said she heard the girls laughing and playing and saw the body fall but did not see either of the girls at the time of the accident. Mrs. Mihan testified she was sitting on her porch just before the accident and the girls walked back and forth and got to playing and running. Mrs. Cooper and Catherine Welch testified that the girls were not scuffling and that nothing was said about ducking Catherine Welch in a tub of water.

Shortly after the accident an examination was made of the railing by various witnesses including the members of the coroner's jury. It was found on the ground directly below the stairway. Each end of the top rail contained three eight-penny finishing nails which had rusted off. The ends of the rail, at the point of contact with the posts, had decayed and were rotten. There was some variance in the testimony as to the exact number of nails in these rails, but all witnesses agreed that the wood was decayed at both ends and that the nails were rusted.

Appellant testified the building had been built about twenty-two years, and the section of the rail in question was constructed about 1913 by him, and he was present part of the time when it was put in; that the center porch was used by the tenants in common and there was no roof over it. On several occasions he was in the building, and remembered he was there three or four weeks before the accident and was up to see Mrs. Cooper. Edward Parmalee testified he was employed as a carpenter by the appellant and it was his duty to look over the porches and see that everything was satisfactory, and it was customary for him to examine the railings; that he made an examination in May, 1919, but did not remember whether he had nailed any portion of the railing at that time or made any repairs on it.

The law is well settled in this State that a landlord who rents different parts of a building to various ten-

ants and maintains control of the porches, stairs, porchways, hallways or other means of approach to the several portions of the building for the common use of his tenants, has resting on him the duty to use reasonable care to keep the premises in a reasonably safe condition, and he is liable for an injury which results to persons lawfully in such building from his failure to perform such duty. *Trower v. Wehner,* 75 Ill. App. 655; *Payne v. Irvin,* 144 Ill. 482; *Mueller v. Phelps,* 252 Ill. 630. Approaches for the common use of the tenants include the landings, stairways, porches, hallways and other means of approach to the several parts of the building when used by the tenant for the purpose of ingress and egress to and from the building to the yard and street. *Petterson v. Gnatek,* 205 Ill. App. 309; *Fowler v. Crilly,* 187 Ill. App. 399. When a porch is used in common by two tenants, the landlord is required to keep up the repairs thereon for the reason that it is not in the exclusive possession of either tenant. *Lovas v. Independent Breweries Co.,* 199 Ill. App. 60; *Powrozek v. Pollan,* 209 Ill. App. 576. In order to come fully within the scope of the definition of a latent defect, the defect must be hidden from the knowledge as well as from the sight and must be one which could not be discovered by the exercise of ordinary and reasonable care. *Smith v. Morrow,* 220 Ill. App. 627. If, by the exercise of reasonable care, the landlord could have ascertained and discovered the defective condition of the railing, then such defect cannot be classed as a latent defect. *Burke v. Hulett,* 216 Ill. 545; *B. Shoninger Co. v. Mann,* 219 Ill. 242. No defect is latent which can be discovered by the exercise of reasonable care, or which a reasonable inspection will reveal. Hence the landlord would be chargeable with any knowledge which a reasonable inspection would disclose. *Sack v. Dolese,* 137 Ill. 129. The question as to whether or not the appellant did exercise reasonable care to dis-

cover the defect and whether or not it could have been discovered by the exercise of reasonable care were questions of fact for the jury. *Wabash Ry. Co. v. Brown,* 152 Ill. 484; *Milauskis v. Terminal R. R. Ass'n of St. Louis,* 286 Ill. 547.

Appella⸴t contends that the defect which caused the death of the deceased was a latent defect for which appellant was not liable. In support of this position he contends that there was nothing wrong with the railing so far as could be determined by looking at it. It was flush with the porch post, was painted, and no defects of any kind were observable until after the accident; that Mrs. Cooper testified that during the fourteen months she had lived in this apartment, each week she hung her washing on the wire over this rail and had never noticed anything wrong with it, and that the railing was worn smooth at the end where Mrs. Cooper stood while hanging clothes.

This rail at the outer edge of the porch on the third story of the building was constructed for the purpose of safeguarding any and all persons who might rightfully be on the porch. The rail was erected in 1913. Appellant was present part of the time when this particular section was put in place. For this reason he probably knew of the manner in which this rail was constructed, how it was fastened to the post, and how many nails were used in it. The rails were not morticed into the posts, but were fastened to the posts by three or four finishing nails. It had been painted and the paint might have concealed a part of the defects. It was exposed to snow and rain, heat and cold for six years. It is apparent from physical conditions which are undisputed that the elements rusted the nails and rotted the ends of the rails. This deterioration had reached that stage where the railing was scarcely fastened at all. One end did not become loose first and then the other end, but it fell in one piece. The section which caused the death was under the ex-

clusive control of the landlord and it was his duty to exercise reasonable care to see that it was reasonably safe. While the evidence shows that he was at the building on several occasions and saw the railing, he never caused any repairs to be made upon it. He tes tified he sent a man to examine the building, but the evidence fails to show any examination at this point. It is apparent from the evidence that if this rail was in the condition which the evidence shows it was in, a reasonable inspection probably would have revealed it. It is hard to understand how a piece of railing in this condition could not have been discovered by a reasonable inspection. Merely looking at it might not have revealed the rusty nails which were concealed, but an inspection probably would have revealed the rotten ends of the rails, or there would have been some indication that the ends of the rails were rotten. Undoubtedly any force applied to the rail in its weakened condition would have demonstrated that it was unsafe. There was no evidence whatever that the ends of this rail were split or torn loose from the posts as would have been the case if considerable force had been applied at the time of the accident. The appellant cannot escape liability merely because the defect was hidden and not discernible, but if the exercise of reasonable care demanded that he should make an inspection to determine the condition, and such an inspection would have revealed the defect, it was his duty to do so, and, if he failed to do so, he cannot escape liability because of such failure. Whether he could have discovered this defect by the exercise of reasonable care was a question of fact and we will not disturb the verdict unless it is clearly against the weight of the evidence, which we cannot say in this case. *Marble v. Marble's Estate*, 304 Ill. 229.

The next point urged by appellant is that the conduct of the deceased contributed to the accident and two facts are set out as a basis for this contention,

first, that the accident could not have happened in the manner described by the witnesses because of the position of the body after it fell and struck the sidewalk; and second, that there was a friendly scuffle which caused the deceased to lose her balance and strike the railing with great force, causing it to break.

The two eyewitnesses testified there was no scuffling prior to the accident and that there was no attempt made to duck Catherine Welch in a tub of water. These witnesses testify that the girls were walking down the porch toward the stairway and the deceased turned and put her hand on the rail and it fell and she was killed. The only other witness who could have seen the accident was Burke who was on the east porch on the same floor. He did not hear anything that attracted his attention until he heard the noise and the scream. Other witnesses were on the floors below and could not see the girls. The rail was built for the purpose of affording protection. It was supposed to be of sufficient strength to resist some force otherwise it was of no value. From a careful reading of all the evidence, we are of the opinion that the great preponderance of it does not sustain the contention of the appellant that the girls were scuffling, or that there was any attempt to duck one of them in the water, or that the deceased was pushed against the rail with great force. We think the evidence of the two eyewitnesses is further sustained by the condition of the rail after it was found on the sidewalk. It was not splintered or broken and showed no sign of having been forcibly torn from its position, but it did show that the ends. were rotten and that the nails had rusted.

Appellant contends that the evidence shows the body of the deceased was lying east of the rail and east of the east post and from this appellant argues that the deceased struck the railing from a southwesterly angle with force enough to drive it out. We do

not think there is any merit in this contention. The position of the body on the ground would depend largely upon the circumstances attending the fall, where the deceased started to fall, in which direction she fell, what attempt she made to save herself, and various other elements which might tend to determine where the body would strike the sidewalk.

All of the instructions offered on behalf of the appellant were given except one, which dealt with the duty of a landlord under the facts in this case. Appellant insists that the refusal of this instruction was error. Twelve instructions were given on behalf of the appellant and when they are read as a series in connection with those given on behalf of the appellee, we think they fully cover every feature of the law applicable to the case. The instruction refused was not accurate for the reason that it omitted entirely the element of the exercise of reasonable care. All other features of it were covered by other instructions given and its refusal was not error.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*